UNITED STATES DISTRICT COURT
SOUTHERN DISTICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

 VS.                                    CRIMINAL NO. 3:19CR239TSL-FKB

DVONTE AMIR KING                                            DEFENDANT

<u>ORDER</u>

     This cause is before the court on a "Petition for Warrant or
Summons for Offender Under Supervision" alleging that defendant
Dvonte King violated conditions of his supervised release.  A
final revocation hearing was held by the court on October 11,
2022, at which defendant appeared in person and through counsel.
As explained more fully below, the court, upon due consideration
of the filings, evidence, arguments and applicable law, finds that
defendant has violated the terms of his supervised release.  The
court therefore concludes that defendant's term of supervised
release should be revoked and the hearing reconvened for the
imposition of the court's sentence.

     On January 21, 2021, this court sentenced defendant King to a
term of twelve months and one day's imprisonment, to run
concurrent on two counts of conviction for making a false
statement of material fact to a licensed firearms dealer in
connection with acquiring a firearm in violation of 18 U.S.C. §

1

922(a)(6) and for making a false statement to a licensed firearms dealer with respect to information required by Chapter 44, in violation of 18 U.S.C. § 924(a)(1)(A).  The court additionally imposed concurrent three-year terms of supervised release to follow his term of imprisonment.  Defendant completed his term of imprisonment on June 25, 2021, thus commencing his term of supervised release.  On August 9, 2022, the United States Probation Office filed a Petition for Warrant for Offender under Supervision, alleging the following two violations:  (1) violation of a mandatory condition by failing to refrain from a violation of the law based on a July 12, 2022 charge of domestic violence/ creating fear and felon in possession of a firearm; and (2) failing to pay the court-ordered special assessment and timely pay the $1,500 fine imposed as part of his sentence.

18 U.S.C. § 3583(e)(3) states:

The court may … revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release….

Further, Sentencing Guideline § 7B1.3(a)(1) provides that supervised release shall be revoked upon a finding of a Grade A or

2

B supervised release violation.  In the present case, the highest grade charge on revocation is a Class B violation.

The incident which led the Probation Office to file the present petition occurred around 1:30 a.m. on July 12, 2022, when Warren County sheriff's deputies were dispatched to the residence of Debrisha Dillon in response to a 911 domestic disturbance call by Dillon's twelve-year old son Jordin Lane in which Jordan reported that his stepfather, King, was beating his mother.[1]  In that call, Jordin reported that King had access to a gun.[2] Officer Michael Whitley testified at the hearing that he was the first to arrive on the scene, where he was met at the door by one of Dillon's children, who told him that Dillon and King were in the bathroom.  Deputy Whitley stated that he entered the residence and found King and Dillon in the bathroom, as reported.  According to Whitley, King volunteered that he and Dillon had an argument and were just talking; and Dillon, at that time, said little to nothing.  In a report prepared by Whitley on the day of or immediately following the incident, Whitley wrote that after

---

[1]    In fact, King is not Jordin's stepfather but rather is Dillon's boyfriend and the father of her four-year old child.

[2]    To her credit, Dillon, who had experienced domestic abuse by King in the past, had trained her children - ages four, eight, ten and twelve - to call 911 if things with King got out of hand.

additional units arrived on the scene, he asked Dillon and Jordin
to step outside.

> Once outside, [Dillon] stated that King had her in the
> bathroom and that he held her at gunpoint.  She stated
> that he didn't assault her, he just threatened her with
> the weapon.  She stated that he would take it on and off
> safety, point it at her, and verbally threaten her.

> Sergeant Ray Thompson (WC-28) walked inside with Dillon
> [and] came back outside with a Smith and Wesson M&P
> shield 9mm handgun that he recovered from inside of the
> residence.  He stated that it was in a basket on the
> back of the toilet.  Deputy Thompson told me to place
> King in handcuffs at that point. I detained King per
> Deputy Thompson.  King stated multiple times that he had
> been to federal prison and couldn't have a gun.  Deputy
> Thompson and myself walked back in the residence where
> we spoke to Dillon and Jazlyah Clark (8), Jordin Lane
> (12) and Jornel Lane (10), Dillon's children.  Jordin
> Lane stated that he saw King point the gun at his
> mother.  Jornel Lane stated that she had seen the
> handgun inside of the house before in King's possession.
> All of the Juveniles and Dillon stated that the firearm
> belonged to Dvonte King.

It was obvious from his testimony that Whitley, even after
reviewing his report, had little independent recollection of the
details of the events of the night in question and his interaction
with King or with Dillon or her children.  Sergeant Ray Thompson,
on the other hand, was clear, unequivocal and credible in his
recollection, which was fully consistent with the substance of
Whitley's report.

According to Thompson, after separating King and Dillon,
Dillon told him that she and King had gone out and had a few

4

drinks; and after they arrived back at the house, they got in an argument.  She stated that she had gone to use the bathroom when King entered the bathroom, very irate, and pointed a gun at her and threatened to kill her.  According to Thompson, she described the gun to him as a "small black gun, with glowing sites."  King, Thompson said, denied there was a gun, so he asked Dillon if he could speak with the children.  She agreed.  And according to Thompson, both Dillon and the children stated that there was a gun in the house and that it belonged to King.  Dillon stated that King did not have the gun on him, though, and that he had stashed it somewhere.  Thompson went in the bathroom and found a gun in a wicker basket sitting on the back of the toilet.  Upon finding the gun, King was arrested and charged, *inter alia*, as a felon in possession of a firearm.

For her part, Dillon testified at the revocation hearing and denied that King had possessed a gun or had access to a gun or had threatened her on the night in question, with a gun or otherwise. She claimed that she and King had gone out drinking and that she had had more to drink that night than she has ever had to drink at any time in her life and that she can only remember "bits and pieces" of what happened that night or what she told the officers. She claimed that the gun, in fact, did not belong to King but rather belonged to a friend of hers, Stanley Ross, who stayed at

her house on occasion; and she claimed that she did not tell the
officers this at the time because she did not want King to know
that Ross had stayed at her house (ostensibly for fear of being
accused of infidelity).

The court finds that Dillon's hearing testimony was not
credible.  The court fully credits the testimony of Thompson that
Dillon and the children with whom he spoke stated that there was a
gun in the hose that belonged to King, and that King had
threatened Dillon with that gun.  And the court believes it to be
more likely than not that what Dillon and the children reported to
Sergeant Thompson and Deputy Whitley was, in fact, true.  Dillon
claims now that she was so drunk that she cannot now remember what
she may have said or done that night.  But Thompson testified
credibly that when he spoke with Dillon that night, there was
nothing to indicate that she had been drinking.  There was no
smell of alcohol, no slurring of her speech, nothing.  She was in
control of her faculties and confident in her statements to him.
What she appeared, he said, was scared, as did the children.
Moreover, Thompson said she described to him past incidents of
domestic abuse by King.  Dillon herself admitted that there had
been past incidents, and in fact that she had instructed her
children as to what they should do in the event of an episode of
violence.

6

Dillon has her reasons, no doubt, for recanting her story. That is often the case with victims of abuse.  But the fact that she is unwilling now to admit what occurred does not lessen the court's belief that King did in fact threaten her with a firearm and thereby violated a mandatory condition of his supervised release.

The court acknowledges that defendant has objected to certain evidence presented at the hearing on the basis that it is hearsay and violates his right to confrontation of adverse witnesses.  His specific objection, as the court understands his position, relates to portions of Jordin Lane's 911 call which defendant contends were testimonial in nature.  And while it is not entirely clear, his objection may also relate to other evidence, including portions of Whitley's report and Sergeant Thompson's testimony relating statements of Dillon's children regarding King's possession of a gun.  In the court's opinion, his objection is not well founded.

Due process requires that a defendant released under supervision who faces a loss of liberty following revocation must "be given a fair and meaningful opportunity to refute and challenge adverse evidence to assure that the court's relevant findings are based on verified facts."  United States v.

Grandlund, 71 F.3d 507, 510 (5th Cir. 1995), opinion clarified, 77 F.3d 811 (5th Cir. 1996).  Thus, generally speaking, "a person in supervised release revocation proceedings ha[s] 'the right to confront and cross-examine adverse witnesses….'"  United States v. Burnett, 537 F. App'x 299, 301 (5th Cir. 2012) (quoting United States v. McCormick, 54 F.3d 214, 221 (5th Cir. 1995)).  But the right to confrontation at revocation proceedings "is a limited one in that revocation hearings should be flexible enough that a court may consider 'material that would not be admissible in an adversary criminal trial.'  Hearsay evidence is such material…."  United States v. Denson, 224 Fed. Appx. 417, 418, 2007 WL 1112658, at *1 (5th Cir. 2007) (quoting Morrissey, 408 U.S. at 489, 92 S. Ct. 2593).  Accordingly, a releasee has a right to confrontation "unless the hearing officer specifically finds good cause for not allowing confrontation."  United States v. McCormick, 54 F.3d 214, 221 (5th Cir. 1995).  To that end, when determining whether hearsay is admissible in revocation proceedings, the court 'balances the releasee's interest in confronting a particular witness against the government's good cause for denying it.'"  United States v. Nolley, 678 F. App'x 223 (5th Cir. 2017) (quoting United States v. Alaniz-Alaniz, 38 F.3d 788, 791 (5th Cir. 1994) (modification omitted) (quoting United States v. Kindred, 918 F.2d 485, 486 (5th Cir. 1990))).

8

There is unquestionably good cause for not allowing confrontation of Dillon's children.  Indeed, in the court's view, it would be irresponsible to allow these children to be put in the position of testifying in this matter.  Were they to testify, their safety and well-being could well be at risk.  And the court is persuaded that their statements to Thompson and Whitley, under the circumstances they were given, were reliable.

Conclusion

Based on the foregoing, it is ordered that defendant's objections are overruled and it follows that the government's exhibits 1 and 2 are admitted into evidence.  The court further finds that defendant's term of supervised release is due to be revoked such that the revocation hearing shall be reconvened on October 24, 2022, at 9:15 a.m. for the imposition of the revocation sentence.

SO ORDERED this 13th day of October, 2022.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

9